**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Chief Judge Marcia S. Krieger**

**Civil Action No. 14-cv-01919-MSK-NYW**

**JAMES R. DAWSON, JR.,**

**Plaintiff,**

**v.**

**JOHN SUTHERS,**

**Defendant.**

---

**OPINION AND ORDER ADOPTING RECOMMENDATION AND GRANTING MOTION TO DISMISS**

---

**THIS MATTER** comes before the Court on Mr. Dawson's Objections **(# 22)** to the Magistrate Judge's August 5, 2015 Recommendation **(# 21)** that Mr. Suther's Motion to Dismiss **(# 11)** be granted.

## FACTS

The facts of this case, at least as alleged by Mr. Dawson, are fairly straightforward. In or about 1991, Mr. Dawson was charged with murder (among other crimes) in state court in Colorado. Mr. Dawson raised a defense of intoxication and drug-related mental impairment. At that time, the presiding judge directed that the Denver Sheriff's Department obtain and preserve blood and urine samples from Mr. Dawson, in anticipation of testing in support of his defense. It does not appear that the samples were tested, and in 1992, Mr. Dawson was convicted on charges of second degree murder, among others. Mr. Dawson appealed that conviction and has collaterally challenged it on several occasions, all unsuccessfully.

In the early 2000s, Colorado enacted a series of laws addressing the retention and post-conviction testing of DNA evidence. C.R.S. § 18-1-411 *et seq.* Specifically, C.R.S. § 18-1-412 provides a means by which defendants could apply to the court for post-conviction DNA testing. A defendant must first make a *prima facie* showing that, among other things: (i) a law enforcement agency remains in actual or constructive possession of evidence that could be reliably tested; (ii) that conclusive DNA testing was not previously performed on the evidence; and (iii) that favorable DNA test results would demonstrate the defendant's actual innocence. C.R.S. § 18-1-413(1)(a)-(d). If the defendant makes such a showing, the court then conducts a hearing to determine whether to order such testing. C.R.S. § 18-1-412(5). If testing is ordered, the defendant may then use the test results in any collateral attack on his or her conviction. C.R.S. § 18-1-416. C.R.S. § 18-1-414, which is at issue here, directs that, once "a court [has granted] a motion for hearing" on a request for testing under C.R.S. § 18-1-412, the court "shall order the appropriate law enforcement agency to preserve existing biological evidence for DNA testing." C.R.S. § 18-1-414(2)(a). Thereafter, if evidence "subject to an order pursuant to this subsection" is destroyed by law enforcement officials, the court is required to conduct a hearing "to determine whether a remedy is warranted." C.R.S. § 18-1-414(2)(b).

In or about 2010, Mr. Dawson learned that the blood and urine samples taken in 1991 were somehow lost or destroyed by law enforcement officials. He filed a motion in state court, requesting a hearing under C.R.S. § 18-1-414(2)(b) to determine the appropriate remedy. The trial court apparently[1] denied the motion, observing that: (i) the statute applied only to DNA

---

**1** The Court derives some of its understanding of the factual posture of this case from the Colorado Court of Appeals' October 13, 2011 decision in *People v. Dawson*, Court of Appeals Case No. 10CA1073. That document is directly addressed in (although not attached to) Mr. Dawson's Complaint, was filed by Mr. Suthers at Docket # 12, and Mr. Dawson has not disputed the authenticity of the copy filed by Mr. Suthers.

evidence, not evidence of temporary intoxication; and (ii) the statute did not apply to Mr. Dawson in any event because he sought the testing in furtherance of defenses of diminished capacity, not in furtherance of a claim of actual innocence. Mr. Dawson appealed that denial through the Colorado courts, but the Colorado Court of Appeals affirmed on October 13, 2011. The Colorado Supreme Court affirmed that decision without a written opinion on December 17, 2013.

Mr. Dawson then commenced this action, *pro se*. He explains that his claims are "based upon the principles announced by the United States in *Skinner v. Switzer*, 131 S.Ct. 1289 (2011)" and that he "is not challenging the Defendant's conduct or State Court's decisions, but is challenging C.R.S. § 18-1-414(2)(b) . . . assailing [it] as . . . unconstitutional." He appears to contend that the denial of a "judicial remedy hearing for lost or destroyed biological evidence is . . . a violation of my liberty interest and vested constitutional rights to due process and equal protection under the Fourteenth Amendment of the United States Constitution."

Mr. Suthers, as the Attorney General for the State of Colorado, moved to dismiss **(# 11)** Mr. Dawson's claims, arguing: (i) Mr. Dawson's claim is untimely, having accrued no later than the October 13, 2011 date on which the Colorado Court of Appeals affirmed the trial court's ruling denying him a remedial hearing; (ii) that the Attorney General is not a proper party, as Mr. Dawson is seeking relief (the granting of a remedy hearing under C.R.S. § 18-1-414(2)(b) can only be granted by the trial court); (iii) that Mr. Dawson's claim is barred by the *Rooker-Feldman* doctrine; and (iv) that Mr. Dawson fails to state either a procedural due process or equal protection claim.

This Court referred Mr. Suthers' motion to the Magistrate Judge for a recommendation. On August 5, 2015, the Magistrate Judge recommended **(# 21)** that Mr. Suthers' motion be

granted. Specifically, the Magistrate Judge found: (i) that Mr. Dawson lacks standing to pursue a claim against Mr. Suthers, both because Mr. Dawson has not alleged facts showing a likelihood that he would be injured by illegal conduct by Mr. Suthers in the future and because it is the state trial court, not Mr. Suthers, who can provide the remedy hearing that Mr. Dawson is requesting as relief; (ii) that the *Rooker-Feldman* doctrine bars Mr. Dawson's request for relief, in that "the heart of [his] Complaint is his disagreement with the Denver District Court ruling that he is not entitled to a judicial remedy hearing"; (iii) that Mr. Dawson's claim would otherwise be barred by the statute of limitations, as it accrued no later than October 13, 2011; and (iv) were the Court to reach the merits, it should find that the U.S. Constitution does not protect a right to post-conviction DNA testing, *citing McDaniel v. Suthers,* 335 Fed.Appx. 734 (10th Cir. 2009).

Mr. Dawson filed timely Objections **(# 22)** to the Recommendation. Although the time for Mr. Suthers to respond has not yet run, the Court is sufficiently apprised of the parties' positions from their prior briefing, such that no response is necessary.

## ANALYSIS

### A. Standard of review

Pursuant to Fed. R. Civ. P. 72(b), the Court reviews the objected-to portions of the Recommendation *de novo*. The Court is mindful of Mr. Dawson's *pro se* status and, accordingly, it reads his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### B. Narrowing the issues

Before the Court can proceed to analyze Mr. Dawson's claims, it must first attempt to ascertain precisely what those claims are. In this regard, Mr. Dawson's Complaint makes three statements, each of which is pertinent. First, he suggests that his claims conform "to the principles announced . . . in *Skinner*." Second, he notes that he "is not challenging Mr. Suthers'

conduct." Third, he states that he is also not challenging "the decisions reached by the State Courts." The Court addresses each of these in turn.

1. *Skinner v. Switzer*

In *Skinner*, the Supreme Court considered whether "a convicted state prisoner seeking DNA testing of crime-scene evidence [could] assert that claim in a civil rights action under 42 U.S.C. § 1983, or [whether] such a claim [is] cognizable in federal court only when asserted in a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254." *Skinner v. Switzer*, 562 U.S. 521, 524 (2011). Mr. Skinner was convicted of murdering his girlfriend and her two sons in 1995; at trial, Mr. Skinner posited that the actual perpetrator was Robert Donnell, the girlfriend's uncle. Although law enforcement officials tested some of the evidence for DNA, significant items, including bloodied weapons and hair samples, were not tested. Although Mr. Skinner brought collateral attacks on his conviction, they were unsuccessful. *Id.* at 525-28.

In 2001, Texas enacted a statute allowing post-conviction DNA testing in certain circumstances. In 2001, Mr. Skinner sought testing under the new statute, but the trial court denied that request, finding that Mr. Skinner had now shown a reasonable probability that he would not have been convicted, even if the DNA testing yielded exculpatory evidence. *Id.* at 528. Mr. Skinner moved for testing again in 2007, citing to additional exculpatory evidence he had obtained in the interim. The court again denied his request, this time finding that he had not shown that he was not "at fault" for the decision not to seek testing at the time of trial (in other words, the court found that Mr. Skinner's counsel made a strategic decision not to seek DNA testing of the additional evidence, believing that the testing might further incriminate Mr. Skinner). *Id.* at 527-28.

Mr. Skinner then filed an action in federal court pursuant to 42 U.S.C. § 1983, naming the District Attorney who prosecuted him (and who retained the untested evidence) as the defendant, and contending that the refusal to provide the testing he requested violated his Fourteenth Amendment right to due process. The trial court dismissed the claim, finding that requests for postconviction testing were in the nature of a *habeas* proceeding, and not cognizable under § 1983. The Fifth Circuit affirmed that dismissal. *Id.* at 529.

The Supreme Court's decision addressed two potential impediments to Mr. Skinner's claim going forward, rejecting them both. First, it rejected the notion that such a claim was barred by the *Rooker-Feldman* doctrine. Emphasizing the narrow scope of that doctrine, the Court explained that a plaintiff presenting "an independent federal claim" does not run afoul of *Rooker-Feldman*, even if adjudication of that federal claim will touch on "the same or a related question" considered in the state suit. *Id.* at 532. The Court noted that although Mr. Skinner had twice sought relief under the state statute, and that both those attempts had been unsuccessful, his claim in the federal suit was distinct: "Skinner does not challenge the adverse [state] decisions themselves; instead, he targets as unconstitutional the Texas statute as authoritatively construed." *Id.* In such circumstances, the Court explained, "a state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action." *Id.* Thus, the Court found no *Rooker-Feldman* impediment to Mr. Skinner's claim proceeding.

Second, the Court considered whether a § 1983 suit or a *habeas* proceeding was the proper vehicle for Mr. Skinner's suit. The Court concluded that the claim was not akin to a *habeas* petition because Mr. Skinner's claimed remedy was simply to have the evidence tested. Such relief would not, of itself, "terminate custody, accelerate the future date of release from

custody, nor reduce the level of custody" for Mr. Skinner. *Id.* at 534. Indeed, as the Court noted, "results [of any testing that was obtained by Mr. Skinner] might prove inconclusive or they might further incriminate Skinner." *Id.* Thus, the Court found, it was appropriate for Mr. Skinner to pursue the claim under § 1983.

2. Mr. Suthers' conduct

Mr. Dawson expressly states that he "is not challenging Mr. Suthers' conduct." Parsing that statement in the context of *Skinner*, on which Mr. Dawson has clearly modeled his Complaint, the Court understands Mr. Dawson to be conceding that he is not seeking to assert that the apparent loss or destruction of the blood and urine samples by the Denver Sheriff's Department (which, obviously are not attributable to Mr. Suthers in any event) constitutes a denial of exculpatory evidence in violation of *Brady* or entitles Mr. Dawson to money damages against Mr. Suthers (individually or from the State of Colorado). *Skinner* makes clear that the Supreme Court is unwilling to treat claims of this type as implicating the protections of *Brady*, as untested DNA evidence is not necessarily "exculpatory,". In any event, the appropriate remedy for a *Brady* violation is usually vacatur of the conviction, a remedy that conflicts with the conclusion that § 1983, rather than *habeas*, is the proper vehicle for claims of this type. 562 U.S. at 536.

3. The state court decisions

Finally, Mr. Dawson concedes that he is "not challenging . . . the decisions reached by the State Courts." This is, of course, a critical concession that is necessary to avoid the application of the *Rooker-Feldman* doctrine, as noted above. It is also critical in that it necessarily reflects Mr. Dawson's concession to the state courts' interpretation of C.R.S. § 18-1-411 *et seq.*: that the statute is only applicable to requests for DNA testing (as opposed to testing

to establish the presence or concentration of drugs or alcohol in a defendant's system) and that the statute only applies where a defendant can make a colorable claim that favorable testing would demonstrate the defendant's "actual innocence" of the crime (as opposed to successful testing that would mitigate some degree of culpability for a crime that the defendant is otherwise guilty of committing). These are matters of statutory interpretation that are appropriately the province of the state courts in the first instance and, having been conclusively resolved by the state courts on Mr. Dawson's collateral attacks, must be accepted by this Court as authoritative statements of state law. Put simply, the Court must accept as correct the state court's conclusion that Mr. Dawson is not entitled to relief under C.R.S. § 18-1-414(b)(2).

4. The claims at issue

With these principles in mind, the Court can better clarify the precise contours and limitations of Mr. Dawson's claim. Based on Mr. Dawson's Complaint, his response to the motion to dismiss and his Objections, and based on *Skinner*, upon which Mr. Dawson models this suit, Mr. Dawson asserts two claims.

First, the Court understands him to assert a claim that, by excluding scientific testing of evidence for purposes other than DNA analysis from the scope of C.R.S. § 18-1-411 *et seq.*, the State of Colorado deprives affected defendants of the due process guaranteed by the U.S. Constitution because access to such testing is necessarily a right of fundamental importance to the criminal process. Second, the Court understands him to assert that the state law treats defendants who request testing of retained evidence for purposes other than DNA analysis differently from defendants who request testing of such evidence for the purpose of establishing a DNA match (or the absence of one), and does so without a rational basis, thus violating the U.S. Constitution's equal protection clause. Consistent with the concessions discussed above,

Mr. Dawson's only colorable relief, should he succeed on either claim, would be a declaration that C.R.S. § 18-1-411 *et seq.* violates the U.S. Constitution.

**C. Merits**

Having framed Mr. Dawson's claims as discussed above, the Court can proceed to address the motion to dismiss, the Recommendation, and Mr. Dawson's Objections.

The preceding discussion effectively disposes of two issues raised by Mr. Suthers: his status as a proper Defendant and the applicability of the *Rooker-Feldman* doctrine. Mr. Suthers is the proper Defendant in this action because Mr. Dawson is challenging the constitutionality of a state statute, and Mr. Suthers, as Attorney General, is the proper person to defend the constitutionality of such a statute. It is true that Mr. Suthers cannot grant relief in the form of a judicial hearing under C.R.S. § 18-1-414(b)(2) to Mr. Dawson, but as discussed above, such a remedy is not available to Mr. Dawson in any event (at least not without a determination that the state's current construction of C.R.S. § 18-1-414(b)(2) is unconstitutional). As the discussion of *Skinner* makes clear, Mr. Dawson's challenge to the constitutionality of the State of Colorado's interpretation of C.R.S. § 18-1-414(b)(2) presents a different question than whether he is entitled to relief under its terms, thereby removing any applicability of the *Rooker-Feldman* doctrine.

The Court elects to bypass the question of statute of limitations – there are some ambiguities in the record as to the true procedural history of the state court proceedings – and instead turns to whether Mr. Dawson's allegations present a cognizable due process or equal protection claim.

Turning first to due process, the Court is informed by the Supreme Court's decision in *District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52 (2009). There, a convicted criminal defendant sought to access post-conviction DNA testing pursuant to a state-

created procedure, but was denied by the state courts. The defendant then sued in federal court, claiming that the due process clause granted him a right to such testing. The Supreme Court explained that the task of creating a fair and practice post-conviction DNA testing scheme "belongs primarily to the legislature." 557 U.S. at 62. The Court explained that the due process clause is mostly concerned with guaranteeing a defendant a fair trial in the first instance, and that "the State accordingly, has more flexibility in deciding what procedures are needed in the context of postconviction relief." *Id.* at 69. If the state "chooses to offer help to those seeking relief from convictions, due process does not dictate the exact form such assistance must assume." *Id.* A due process claim lies against state post-conviction procedures only if that procedural scheme "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental or transgresses any recognized principle of fundamental fairness in operation." *Id.* In short, then, "Federal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Id.* The Court concluded that the state scheme in question – which included a requirement that the defendant establish that the outcome of the testing would "prove them to be actually innocent" – did not violate any fundamental substantive rights. *Id.* at 64.

Mr. Dawson's due process claim in this case necessarily fails in light of *Osborne*. It is not entirely clear whether Mr. Dawson is contending that C.R.S. § 18-1-411 *et seq*. violates the due process clause because it is available only to those defendants who can claim that testing will reveal their actual innocence, as opposed to persons who (like Mr. Dawson) would rely upon successful testing to argue for a potential diminished capacity defense, or whether Mr. Dawson is contending that the Colorado scheme violates the due process clause because it relates only to testing of evidence for DNA purposes, not for purposes of demonstrating potential intoxication.

But both claims are unavailing. *Osborne* certainly suggests that a statutory scheme that requires a claim that testing will reveal actual innocence withstands due process scrutiny. It is inconceivable that the due process clause would grant <u>more</u> rights to defendants claiming a need to demonstrate a diminished capacity defense to a crime they otherwise acknowledge committing than it would to defendants claiming actual innocence of the charges. And given the "unparalleled ability" of DNA to "exonerate the wrongly convicted," it can hardly be that the due process clause would require states to grant postconviction access to scientific testing for determining drug concentrations in blood or urine where that same postconviction testing scheme would not allow access to DNA testing in the same circumstances. *Id.* at 55. Accordingly, because Mr. Dawson can make no colorable argument that Colorado's postconviction testing scheme violates the due process clause, that claim is properly dismissed.

The Court thus turns to Mr. Dawson's equal protection claim. Mr. Dawson must allege facts showing that: (i) C.R.S. § 18-1-411 *et seq.* treats similarly-situated groups of individuals differently, and (ii) that it does so without any rational connection to a significant governmental interest. *See generally Engquist v. Oregon Dept. of Ag.*, 553 U.S. 591, 601 (2008). Mr. Dawson's equal protection claim seems to be that, as a group, inmates asserting diminished capacity defenses (or, perhaps, those seeking testing of intoxicant concentration) are treated less favorably than inmates asserting actual innocence (or, perhaps, those seeking DNA testing), as the latter are granted access to post-conviction scientific testing by C.R.S. § 18-1-411 *et seq.* while the former are not. Assuming – without necessarily finding – that Mr. Dawson's distinction between the two groups of defendants is colorable, the Court finds that the rational basis for discriminating between them is so obvious that Mr. Dawson cannot plausibly allege its absence. It is patently reasonable for the government to grant persons claiming actual innocence

more access to postconviction remedies than it grants to persons who claim that their culpability for a crime is lessened by a diminished capacity. *See generally Schlup v. Delo*, 513 U.S. 298, 324-25 (1995) ("the individual interest in avoiding injustice is most compelling in the context of actual innocence. . . The overriding importance of this greater individual interest merits protection by imposing a somewhat less exacting standard of proof on a habeas petitioner alleging [actual innocence] than on one alleging" other grounds for relief). Because Mr. Dawson can allege no colorable claim that the State of Colorado lacks a rational basis for granting post-conviction DNA testing under C.R.S. § 18-1-411 *et seq.* to persons claiming actual innocence, his equal protection challenge must be dismissed.

Accordingly, the Court adopts the Recommendation that Mr. Suthers' Motion to Dismiss be granted for the reasons set forth above.

**CONCLUSION**

For the foregoing reasons, Mr. Dawson's Objections are **SUSTAINED IN PART** and **OVERRULED IN PART**. The Court **ADOPTS** the Recommendation **(# 21)** for the reasons set forth above, and **GRANTS** Mr. Suthers' Motion to Dismiss **(# 11)**. All claims in this action are **DISMISSED** and the Clerk of the Court shall close this case.

Dated this 21st day of September, 2015.

**BY THE COURT:**

Marcia S. Krieger

Marcia S. Krieger
Chief United States District Judge